UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
:
WILLIAM ARAUJO, :
:
:
Plaintiff, :
: 19 Civ. 5785 (JPC) (SN)
-v- :
: CLAIM CONSTRUCTION
: OPINION AND ORDER
E. MISHAN & SONS, INC. and FORGOT MY :
SOUVENIRS LLC, :
:
Defendants. :
:
-----------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This patent infringement action concerns exercise devices intended to strengthen abdominal muscles by enabling a technique that resembles a reverse sit-up. Plaintiff William Araujo alleges that Defendants E. Mishan & Sons, Inc. and Forgot My Souvenirs LLC ("Defendants")[1] violated 35 U.S.C. § 281 by infringing his patent for an "Exercise Apparatus for Strengthening Abdominal Muscles." Plaintiff and Defendants now ask the Court to construe two disputed terms in one of the claims of the relevant patent: "first member" and "comprises." Having considered the parties' claim construction briefing and after conducting a *Markman* hearing on February 16, 2022, the Court construes these disputed terms as set forth below.

---

[1] The other Defendants, Robin Roe 1-10, and ABC Corporation 1-10, are "fictitious names . . . whose identities are presently unknown to [P]laintiff." Dkt. 46 ("Am. Compl.") ¶ 3. Those Defendants have not been further identified, nor have they appeared in this action.

I.         Background

**A. Overview of Patent '276**

Plaintiff is the owner of U.S. Patent with Serial Number 9,446,276, in connection with his invention of an "Exercise Apparatus for Strengthening Abdominal Muscles." Am. Compl. ¶ 7; *see id.* Exh. A ("'276 Patent"). The '276 Patent was issued to Plaintiff on September 20, 2016, and that application was a continuation of prior applications by Plaintiff that resulted in a patent issued on April 28, 2015 with Serial Number 9,017,237 (the "'237 Patent"), and before that a patent issued on September 28, 2010 with Serial Number 7,803,097 (the "'097 Patent").[2] Am. Compl. ¶¶ 7-8. The '097 Patent claims earliest priority to a patent application filed on January 1, 2006. *Id.* ¶ 8.

The apparatus claimed in the '276 Patent, as well as its predecessors, is intended to assist users to perform abdominal crunch exercises. *Id.* ¶ 10. The Abstract for the '276 Patent describes the apparatus as follows:

> An exercise apparatus that lies flat on the floor having a back rest rises up when supported by two springs. The lower part of the back and buttocks lie horizontal while the upper part of the back is inclined at an angle on the horizontal. When not in use, the upper back rest folds down flat so that the device can be stored under a bed. The two springs provide back support when the individual is in the reclining position. However, as a person goes from a sitting position to a reclining position, when his or her shoulders contact the back rest, the springs compress and then expand to assist the individual in rising up. The device has two specially designed positional foot rests with straps to provide a place for the individual to place his or her feet.

'276 Patent at 1. The '276 Patent includes the following drawing, labeled Figure 1, for the device:

---

[2] The parties' claim construction briefing incorrectly refers to this patent as having Serial Number 7,083,907.



*Id.* at Figure 1. The device thus essentially allows the user to perform what resembles a reverse sit-up, whereby the user lies on the device and pushes back facing resistance from the springs, with the goal of strengthening the user's abdominal muscles. Am. Compl. ¶¶ 10-11.[3]

The '276 Patent contains five claims. The instant claim construction dispute concerns only terms contained in Claim 1. Claim 1 provides: "An exercise device to assist a person in the

---

[3] The Honorable Sarah Netburn previously offered the following helpful description of how the device functions:

> [T]he device has two elements, joined together by hinges and springs. One element rests on the floor; the second element rests at an angle to the first element. To perform an assisted sit-up with the device, a user sits upon the first element resting her back against the second element. Then, the user pushes backwards against the second element (meeting resistance provided by springs) to recline that part of the device, bringing it closer to the floor (and closer to parallel with the first element). Springs in the device assist the user in returning to a more upright, seated, or resting position.

*Araujo v. E. Mishan & Sons, Inc.*, No. 19 Civ. 5785 (GHW) (SN), 2020 WL 5371323, at *1 (S.D.N.Y. Aug. 7, 2000), *report and recommendation adopted*, 2020 WL 5369888 (S.D.N.Y. Sept. 8, 2020) (citing Am. Compl. ¶¶ 10-11; '276 Patent).

performance of abdominal crunches and exercises," which device consists of various features concerning "a first member that supports the buttocks wherein said first member lays flat on a floor or other essentially planar surface," "a second member that supports the person's back," "at least one hinge connecting the first and second member," and "at least one removable spring having elasticity, which is attached only to said first and second members."  '276 Patent, column 4, lines 14-67, column 5, lines 1-3.  Claim 1 further notes that the "first member comprises a top surface having a top length and width, a bottom surface having a bottom length and width, and a plurality of edge surfaces each having a height that is the same on every edge," *id.*, column 4, lines 19-23, as well as other geometric characteristics, *id.*, column 4, lines 23-45.  Claims 2 through 5 are derivative of Claim 1 and contain no disputed terms.  *Id.*, column 5, lines 4-13.[4]

Plaintiff alleges that Defendants manufacture, market, and sell products called the "Ab Rocket" and the "Ab Rocket Twister" (collectively, the "Accused Products"), which similarly are exercise devices that assist users in performing abdominal crunches and exercises.  Am. Compl. ¶¶ 14, 18, 31.  The Amended Complaint alleges that the "Ab Rocket"

> comprises two hinged elements connected by springs.  The first element rests upon the floor, and it further has a seat upon which a person sits.  The second element of [the Ab Rocket] is used to perform abdominal crunches in the same way as the device of the '276 Patent.

*Id.* ¶ 14.  Plaintiff alleges that the "Ab Rocket Twister" differs from the "Ab Rocket" "in that its seat swivels horizontally around a vertical axis on the first element."  *Id.* ¶ 18.  When assembled, the seat of the "Ab Rocket Twister" is "positioned atop the first element" and "becomes an integral

---

[4] Those claims explain "the elasticity of the at least one removable and replaceable spring is selected by varying the number of coils" (Claim 2), "the first member is essentially horizontal" (Claim 3), "the number of removable and replaceable springs of the at least one removable and replaceable spring is two" (Claim 4), and "the first member is padded with a soft padding material" (Claim 5).  '276 Patent, column 5, lines 4-13.

4

part of the first element." *Id.* Plaintiff alleges that the Accused Products violate claims of the '276 Patent. *Id.* ¶ 33.

The Amended Complaint alleges that Defendant E. Mishan & Sons, Inc. is the owner of trademarks "AB ROCKET," "AB ROCKET TWISTER," and "EMSON," and operates websites that offer the "Ab Rocket" and the "Ab Rocket Twister" for sale. *Id.* ¶¶ 19, 22. The Amended Complaint further alleges that Defendant Forgot My Souvenirs "is involved in the chain of marketing of the Ab Rocket Abdominal Trainer, which infringe upon Plaintiff[']s '276 Patent," and "all sales of the Ab Rocket Abdominal Trainer branded device originate from sales by Defendant[] E. Mishan & Sons, Inc." *Id.* ¶¶ 24-25.

**B. Procedural History**

Plaintiff initiated this action on June 20, 2019, and filed the Amended Complaint on February 5, 2020, alleging direct patent infringement and induced infringement, Am. Compl. ¶¶ 33-34.[5] Soon thereafter, on February 19, 2020, Defendants moved to dismiss the Amended Complaint for failure to state a claim. Dkts. 47-49. On February 21, 2020, the Honorable Gregory H. Woods, to whom this case was previously assigned, referred the case to the Honorable Sarah Netburn for general pretrial supervision and to issue a Report and Recommendation on Defendants' motion to dismiss. Dkt. 50.

On August 7, 2020, Judge Netburn issued a Report and Recommendation, in which she recommended denying Defendants' motion to dismiss in part and granting it in part. *Araujo*, 2020 WL 5371323. Judge Netburn determined that Plaintiff sufficiently pleaded direct patent infringement of the '276 Patent in violation of 35 U.S.C. § 271(a) by adequately alleging that

---

[5] In Defendants' Answer filed on October 30, 2020, E. Mishan & Sons, Inc. pleaded a counterclaim seeking a declaration that the '276 Patent is invalid, and that the patent has not been and is not infringed by E. Mishan & Sons, Inc. Dkt. 72 at 10-13.

Defendants engaged in infringing activities and that the Accused Products infringe Claim 1 of the '276 Patent while setting forth a detailed basis for that alleged infringement. *Id.* at \*2-3. Judge Netburn, however, determined that Plaintiff failed to sufficiently plead inducing infringement in violation of 35 U.S.C. § 271(b), because his conclusory assertions lacked the requisite specific factual allegations to state such a claim. *Id.* at \*4. Accordingly, Judge Netburn recommended that Judge Woods deny Defendants' motion to dismiss Plaintiff's claims of direct patent infringement and grant the motion as to Plaintiff's claims for inducing infringement. *Id.* On September 8, 2020, after receiving no objections from the parties, Judge Woods adopted Judge Netburn's Report and Recommendation in its entirety. *Araujo v. E. Mishan & Sons, Inc.*, No. 19 Civ. 5785 (GHW) (SN), 2020 WL 5369888 (S.D.N.Y. Sept. 8, 2020). Approximately three weeks later, on September 29, 2020, this case was reassigned to the undersigned.

Claim construction briefing followed. On November 16, 2020, the parties filed a Joint Disputed Claim Terms Chart. Dkt. 73 ("Joint Disputed Claims Terms"). On November 30, 2020, Plaintiff filed his initial brief on claim construction, Dkt. 76 ("Pl. Br."), Defendants filed their response on January 6, 2021, Dkt. 80 ("Defts. Br."), and Plaintiff filed his reply brief on January 20, 2021, Dkt. 84 ("Pl. Reply"). The Court held a *Markman* hearing on February 16, 2022, at which Plaintiff himself testified and the Court received presentations and heard arguments from the parties. *See* Dkt. 91 ("*Markman* Hr'g Tr."). As reflected in the briefing and at the *Markman* hearing, the definitions of two terms contained in Claim 1 are in dispute: "first member" and "comprises."

## II.     Legal Standard

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The proper construction of a patent claim is a question of law for the court to decide.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970-71 (Fed. Cir. 1995) (en banc).

To determine the meaning of a claim, a court begins with the intrinsic evidence, which includes the claim itself, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1313-14; *Innova/Pure Water, Inc.*, 381 F.3d at 1116 ("[A] claim construction analysis must begin and remain centered on the claim language itself, for that is the language the patentee has chosen to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" (quoting *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (alteration in original))).  "There is a heavy presumption that claim terms are to be given their ordinary and customary meaning."  *Mass. Inst. of Tech. v. Shire Pharms., Inc.*, 839 F.3d 1111, 1118 (Fed. Cir. 2016) (quoting *Aventis Pharms. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013)).[6]  In arriving at a claim's "ordinary and customary meaning," courts should consider "the meaning that the term would have to a person of ordinary skill in the art in

---

[6] Only two exceptions exist to this general rule that claim terms are to be construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution." *Rovi Guides, Inc. v. Comcast Corp.*, No. 16 Civ. 9278 (JPO), 2017 WL 3447989, at *2 (S.D.N.Y. Aug. 10, 2017) (quoting *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014)).  "The standards for finding lexicography or disavowal are 'exacting.'"  *Id.* (quoting *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014)).

question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313.  In circumstances where that ordinary meaning is readily apparent, claim construction "involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314 (citation omitted).[7]

### III.  Claim Construction

As noted above, the parties dispute the meaning of two terms contained in Claim 1: "first member" and "comprises."   The terms "first member" and "comprises" are found in subsection (a) of Claim 1, which lays out the first of four elements identified in Claim 1.  The complete text of subsection (a) reads:

> a) a **first member** that supports the buttocks wherein said **first member** lays flat on a floor or other essential planar surface, where said **first member comprises** a top surface having a top length and width, a bottom surface having a bottom length and width, and a plurality of edge surfaces each having a height that is the same on every edge, and further wherein:
> the top surface supports the person's buttocks when he is seated thereon;
> the entire top surface is essentially parallel to the bottom surface;
> the heights of the plurality of edge surfaces are not parallel to the lengths or widths of the top and bottom surfaces;
> the length of the top surface is approximately equal to the length of the bottom surface;
> the width of the top surface is approximately equal to the width of the bottom surface;
> the lengths of the top and bottom surfaces are substantially larger than the heights of the plurality of edge surfaces; and
> the entire bottom surface is essentially planar;
> such that when the device is laying on an essentially horizontal surface, the person's buttocks rest directly upon the top surface at a height that is essentially not greater than the heights of the plurality of edge surfaces;

'276 Patent, column 4, lines 17-45 (emphases added).  The term "comprises" also is contained in subsection (b) of Claim 1, which describes the next element of Claim 1, the "second member":

> b) a second member that supports the person's back, wherein the second member

---

[7] If analysis of the intrinsic evidence fails to resolve ambiguity in a disputed claim, a court may then consider extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996).

8

is hinged only to the first member, and further **comprises** at least one soft support pad;

*Id.*, column 4, lines 46-49 (emphasis added).[8]

### A. "First Member"

Plaintiff proposes the following construction of "first member":

The term member refers to a sub-part of a collection of parts forming a system or apparatus. An ordinal number referring to a member refers to a specific sub-part in the collection.

In the instant claimed invention, the term "first member" is the sub-part of the exercise device upon which the person rests. Without further limitation, the term is completely generic.

Pl. Br. at 10; Joint Disputed Claim Terms at 2; *see also* Pl. Br. at 16. In contrast, Defendants urge the Court to construe the term to mean "a flat board." Joint Disputed Claim Terms at 2. After reviewing Claim 1 itself, the Court construes "first member" as "a board that lays flat on the floor."

Construing "first member" as "a board that lays flat on the floor" stands consistent with use of the word "first member" in subsection (a) of Claim 1, read in the full context of that subsection. *See Phillips*, 415 F.3d at 1314 ("[T]he context in which a term is used in the asserted claim can be highly instructive."). That subsection repeatedly describes geometric features of a "first member" that are consistent with those of a board with a flat bottom surface. For instance:

- "said first member comprises a top surface having a top length and width, a bottom surface having bottom length and width, and a plurality of edge surfaces each having a height that is the same on every edge";

- "the entire top surface [of the first member] is essentially parallel to the bottom surface";

---

[8] The parties expressly do not dispute the meaning of the following terms in the '276 Patent: "first member that supports the buttocks," "first member lays flat on a floor or other essential planar surface," "edge surfaces," "entire bottom surface is essentially planar," and "a height that is essentially not greater than the heights of the plurality of edge surfaces." Joint Disputed Claim Terms at 1-2.

- "the length of the top surface is approximately equal to the length of the bottom surface";

- "the width of the top surface is approximately equal to the width of the bottom surface"; and

- "the entire bottom surface is essentially planar."

'276 Patent at 8; *see also* Pl. Br. at 14 ("In the specifications of all the patents, the first member referred to in the specification is a part that lies flat on the ground."). This language, particularly the requirement that the entire bottom surface is planar (*i.e.*, lays flat on a floor or planar surface), describes a board that lays flat on the floor. *See Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").

The specifications in the '276 Patent further support this construction. *See Phillips*, 415 F.3d at 1313 ("[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification."); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004) ("In most cases, the best source for discerning the proper context of claim terms is the patent specification wherein the patent applicant describes the invention."); *Markman*, 52 F.3d at 979 ("Claims must be read in view of the specification, of which they are a part." (citations omitted)). While not using the term "first member" (or "second member," for that matter), the specifications make clear that it is "a part that lies flat on the ground," '276 Patent, column 2, line 40, and further describe it as "horizontal portion 2," *id.*, column 2, lines 55-56, 58, 60. That part, "horizontal portion 2," is depicted in Figure 1 of the '276 Patent as resembling a board that lays flat on the floor or a planar surface. Plaintiff seems to even acknowledge as much. *See* Pl. Br. at 11 ("Element 2 in Figure 1 is the part that lies flat on the

ground. It is the 'first element.' . . . The fact that the drawing shows element 2 as being a flat board, that is only the case in the preferred embodiment."). Furthermore, the specification makes clear that the "first member," *i.e.*, horizontal position 2, is a board with a flat bottom surface that serves the important role of keeping the apparatus flat on the floor during exercise:

> The Present Invention uses a flat padded part **2** (e.g., a padded board) that lies flat on the ground and a spring supported back rest **1** hinged to the flat board. . . . It is important to note that the Present Invention does not use struts to raise the seat off the floor. The use of struts would be superfluous. In fact, struts could cause the device to wobble during exercise if all of the ends do not touch the floor.

'276 Patent, column 3, lines 51-61.

To this end, the '276 Patent appears to contend that the invention is distinguishable from prior art—specifically, two inventions by an inventor identified as "Shifferaw"—because the "first element" is a board that lays flat on the floor. Whereas, as discussed, Figure 1 in the '276 Patent depicts a board that lays flat on a planar surface during the operation of the device, Figure 7, which is a reproduction of an invention by Shifferaw, depicts an exercise apparatus with the bottom of the seat angled not flat, but rather upwards:



FIG. 7

It is therefore clear from the '276 Patent that the "first member" being a board that lays flat on the floor is highly important to Claim 1. *See Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1370 (Fed. Cir. 2003) (explaining that "where the specification makes clear at various points that the claimed invention is narrower than the claim language might imply, it is entirely permissible and proper to limit the claims").

In proposing a different construction of "first member," Plaintiff argues that "[w]ithout further limitation, the term [first member] is completely generic." Pl. Br. at 10, 15-16. Plaintiff's proposed construction, however, fails to address this concern. In order for "first member" to have meaning in the context of an exercise apparatus, it must have a geometric shape, and that shape is described in Claim 1 as being a board that lays flat on the floor. And Plaintiff's contention that he did not intend for this language to define a "first member" as a board that lays flat on the floor, in the face of the above express language, is not persuasive.[9] *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1375 (Fed. Cir. 2001) ("No inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit." (quoting *Markman*, 52 F.3d at 985)).

Plaintiff also resists this interpretation by pointing to the prosecution history to argue that he did not intend "first member" to be limited to a board that lays flat on the floor. Pl. Br. at 14; *see Phillips*, 415 F.3d at 1317 ("The prosecution history, which we have designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the [United States

---

[9] During the *Markman* hearing, Plaintiff also objected to the construction of the "first member" as a "board" because, according to Plaintiff, "[a] board is generally made of wood" and the first member "can be something made of metal." *Markman* Hr'g Tr. at 60-61. Defendants responded that the term "board" is not limited to wood, and the first member could be made of plastic, wood, or metal. *Id.* at 73-74 ("The material of the first member doesn't matter."). The Court agrees with Defendants and finds that the term "board" is not limited to a piece of wood.

Patent and Trademark Office ("PTO")] and includes the prior art cited during the examination of the patent." (citation omitted)). The Federal Circuit in *Phillips*, however, counseled that "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* (citations omitted).

Notwithstanding Plaintiff's efforts to rely on the prosecution history, that history does not support his proposed construction of "first member." "[T]he prosecution history can often inform the meaning of the claim language by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted). The prosecution history here reflects such a limitation of the scope of Claim 1. The '276 Patent was a continuation of the '237 Patent and, before that, the '097 Patent. The prosecution history for these predecessor patents entailed extensive back-and-forth with the PTO, which included multiple rejections of both applications as anticipated by a prior patent by Shifferaw. *See* Pl. Br., Exhs. G, H. In response to a rejection of the patent application, which ultimately resulted in the '237 Patent, Plaintiff added limitations to Claim 1 (which remained in the '276 Patent), which described the geometric features of a board with a flat bottom surface as to "first member," as discussed above.[10]

Plaintiff contended that the amendments that added these geometric features rendered the claim patentable over the Shifferaw patents, largely pointing the PTO to the narrowing of the scope of a "first member" as being a board:

> As may be observed in the drawings and specification, the exercise device of the

---

[10] The application originally merely recited the following in Claim 1 for "first member": "a first member that supports the lower part of the back and the buttocks wherein said first member lays flat on a surface." Pl. Br., Exh. G-2 at 5. After the rejection, this element was amended to include its current full recitation. *Id.*, Exh. G-4 at 5.

13

> Present Application comprises a **first member (the board**, designed as element 2), the padded seat member (designed as element 8) . . . . The padded seat member is affixed to the **first member (the board)**. The first member is hinged only to the second member. From the drawings, it is apparent that **the top and bottom surfaces of the first member are essentially parallel (it is a board)** with essentially perpendicular edges. The length of **the board** is substantially larger than the height (the width of the edges). In addition, the entire bottom surface of the **first member (being a board) is essentially flat to lay flat on a planar surface**.

Pl. Br., Exh. G-4 at 2 (emphases added). Thus, during the patent prosecution, Plaintiff made representations to PTO that plainly described the first member as a board that lays flat on the floor. *Id.* Plaintiff's response to the PTO in connection with that parent application, which resulted in the earlier '237 Patent, applies with equal force to the '276 Patent. *See Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1334 (Fed. Cir. 2003) ("The patentee made a clear and unmistakable disclaimer of claim scope in its prosecution of the parent [] patent, and we presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."). As Defendants noted during the *Markman* hearing,

> [T]he issue is that [Plaintiff] made a representation to the patent office to obtain the patent. [He] reversed prior art by arguing that it's distinct, it's novel, because it has these features of a flat board. And in making that argument [Plaintiff] was clear that the first member is essentially flat. [He is] bound by that representation, not only in the parent application, but in every child application.

*Markman* Hr'g Tr. at 84; *see also id.* at 83-84 (Defendants arguing that because Plaintiff "made a clear and unmistakable disclaimer of claim scope in its prosecution of the parent patent, . . . the same claim term in the same patent or related patents carries the same construed meaning").

Finally, the Court is not persuaded by Plaintiff's argument that the specification in the '276 Patent embodied only the "best mode" of the invention, and additional embodiments that did not entail a board that lays flat on the floor were contained in the parent patents. Pl. Br. at 10-12; *Markman* Hr'g Tr. at 60-61; *see* '097 Patent, column 4, lines 22-50. The '097 Patent included the same drawings as the '276 Patent which, as noted above, depict a board that lays flat on the floor.

14

And like the '276 Patent, the '097 Patent described that figure as including "a part that lies flat on the ground" as "horizonal portion." '097 Patent, column 2, lines 25, 39. The '237 Patent also included the same drawings and description of the "Present Invention" as the '276 Patent and the '097 Patent. Moreover, the '276 Patent repeatedly describes the "Present Invention" as consisting of a board that lays flat on the floor. *See, e.g.*, '276 Patent, column 1, lines 56-57 ("The Present Invention is an exercise apparatus that lies flat on the floor."); *id.*, column 2, lines 40-41 ("Referring to FIG. **1**, the apparatus of the Present Invention comprises a part that lies flat on the ground."); *id.*, column 3, lines 51-52 ("The Present Invention uses a flat padded part **2** (e.g., a padded board) that lies flat on the ground and a spring supported back rest **1** hinged to the flat board."). "When a patent thus describes the features of the 'present invention' as a whole, this description limits the scope of the invention." *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007); *see Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (holding that the claim term "fuel injection system component" is limited to a fuel filter because "[o]n at least four occasions, the written description refers to the fuel filter as 'this invention' or 'the present invention'" and "the written description does not indicate that a fuel filter is merely a preferred embodiment of the claim invention").

Because the intrinsic evidence renders discernible the meaning of "first member," it is not necessary to resort to extrinsic evidence. *See C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004) ("[O]ur caselaw suggests that extrinsic evidence cannot alter any claim meaning discernible from intrinsic evidence." (citations omitted)); *see Phillips*, 415 F.3d at 1318-19 (explaining "several reasons" why the court has "viewed extrinsic evidence in general as less reliable than the patent and its prosecution history in determining how to read claim terms").[11]

---

[11] In any event, in terms of extrinsic evidence, Plaintiff has only pointed to his testimony at the *Markman* hearing about his intent in creating the patents. That intent, however, cannot

B. **"Comprises"**

> Turning to the word, "comprises," Plaintiff advocates for the following construction:
>
> The parties agree that the terms "comprising" and "consisting of," standing alone should be construed according to the [Manual of Patent Examining Procedure ("MPEP")] and federal law. However, Plaintiff assert that while "consisting of" excludes unspecified claim elements, those elements that are included may be further limited or specified. An individual element, which is already specified in the claim, may be further limited by the term "comprises" provided that such limitation applies only to that individual element. Plaintiff maintains that this is the only logical interpretation consistent with the definitions of the transitional terms.

Pl. Br. at 16; *see* Joint Disputed Claim Terms at 2. In advocating this construction, Plaintiff argues that the use of "comprises" in subsection (a) of Claim 1 means that the first member may include elements in addition to those listed in the Claim. *See* Pl. Br., Exh. A at 1.[12] Defendants maintain that the word should have the meaning as "construed under the MPEP and federal case law." Defts. Br. at 13; Joint Disputed Claim Terms at 2. Defendants contend that "comprises" only means that the identified elements are essential, yet other elements may be added, when used as a "transitional term" that joins the preamble of a claim with the body of a claim, thereby affecting the legal scope of the claim. Defts. Br. at 14.

For Claim 1, the "transitional term" is the language "consisting of" that introduces the four elements set forth in that claim: "1. An exercise device to assist a person in the performance of abdominal crunches and exercises, wherein said person has buttocks and a back, said exercise

---

overcome the compelling intrinsic evidence supporting the Court's construction of "first member." But it is also worth noting that even Plaintiff himself testified during the *Markman* hearing that the "first member" is a board that lays flat on the floor. *See Markman* Hr'g Tr. at 41 ("Q. You understand that the first member is a board, correct? A. Yes. Q. You understand that the first member lays flat on the floor, correct? A. Yes. Q. So you understand that a first member is a board that lays flat on the floor? A. Yes.").

[12] There does not appear to be a dispute as to the use of "comprises" in subsection (b) of Claim 1, which concerns a "second member." Regardless, the following analysis would apply with equal force to the construction of "comprises" in subsection (b).

device **consisting of**: . . . ." '276 Patent, column 4, lines 14-16 (emphasis added).  Four elements then follow: (1) a first member, (2) a second member, (3) at least one hinge, and (4) at least one removable and replaceable spring.  *Id.* column 4, lines 17-67, column 5, lines 1-3.  As such, Claim 1 consists of only those four elements, and not any more.  *See* MPEP § 2111.03 ("The transitional phrase 'consisting of' excludes any element, step, or ingredient not specified in the claim. . . .  A claim which depends from a claim which 'consists of' the recited elements or steps cannot add an element or step.").  The question thus becomes whether the subsequent use of "comprises" within the elements of "first member" in Claim 1 likewise limits what follows to only those items listed.

If used as a "transitional term," the word "comprises" would not be limited only to the items that follow.  *Id.* ("The transitional term 'comprising', which is synonymous with 'including,' 'containing,' or 'characterized by,' is inclusive or open-ended and does not exclude additional, unrecited elements or method steps.").  But as noted, the "transitional term" in the '276 Patent is "consisting of."  '276 Patent, column 4, line 16.  The word "comprises" is then used to limit the "first member" claim element.  *Id.*, column 4, lines 19-23 ("said first member comprises a top surface having a top length and width, a bottom surface having a bottom length and width, and a plurality of edge surfaces each having a height that is the same on every edge").

The Federal Circuit's decision in *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed. Cir. 1986), is on point.  There, the Federal Circuit held that "compromising" when used in the context of a claim element to further limit that element, rather than used as a transitional term, is "reasonably interpreted" to mean "'having' but not 'having at least.'"  *Id.* at 1271 n.8.  Plaintiff seeks to distinguish *Moleculon Research* on the grounds that the question facing the Federal Circuit there "was whether there could be more than four cubes that rotate about the first axis" and the court concluded that "there could not be more than four cubes because that was the element's

17

express limitation." Pl. Reply at 13-14.  In contrast, Plaintiff contends that the use of "comprises" in Claim 1(a) "does not expand the scope of the claim" because "there is no express limitation in the description of 'first member' that would prohibit the 'first member' from having additional sub-elements." *Id.* at 14.  The Court disagrees.

"Courts have held that when used in the body of a claim, and not as a transition, the term 'comprising' should be interpreted according to the normal rules of claim interpretation." *Barnes & Noble, Inc. v. LSI Corp.*, No. C-11-2709 (EMC), 2014 WL 1365422, at *23 (N.D. Cal. Apr. 7, 2014) (citing *Moleculon Rsch. Corp.*, 793 F.2d at 1272 n.8); *see also Med. Rsch. Inst. v. Bio-Engineered Supplements & Nutrition, Inc.*, No. 605 Civ. 417, 2007 WL 128937, at *4 (E.D. Tex. Jan. 12, 2007) ("The Court agrees with [the defendant] that 'comprising' in the body of the term should be construed according to normal claim construction rules.").  Under normal rules of claim construction, the term "comprises," when not used as a transitional term, means "to be made up of," "compose," and "constitute." *Comprise*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/comprise (accessed June 20, 2022); *see also Moleculon Rsch. Corp.*, 793 F.2d at 1272 n.8 (defining "comprising" according to the normal rules of claim interpretation as "having" but not "having at least"); *Barnes & Noble, Inc.*, 2014 WL 1365422, at *23 (defining "comprising" in the body of the claim as "to consist of" or "to make up").  And this makes sense.  Plaintiff's requested construction of "comprises" in Claim 1(a) would illogically broaden the scope of the transitional term, "consisting of," by allowing the scope of Claim 1(a) to expand.  *See Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1359 (Fed. Cir. 2016) (referring to the "the exceptionally strong presumption that a claim term set off with 'consisting of' is closed to unrecited elements").  Accordingly, consistent with *Moleculon Research*, the Court construes "comprises" in the context used in Claim 1 as meaning "have" (but

not "have at least").

Under this framework, the Court construes Claim 1 as setting forth four elements that the claim "consist[s] of": a first member, a second member, at least one hinge, and at least one spring. With respect to first member, that element is comprised of certain limitations as set forth in Claim 1(a). '276 Patent, column 4, lines 17-45.[13]  The Court will not construe the use of "comprises" within Claim 1(a) to expand the scope to include additional limitations that are not enumerated.

## IV. Conclusion

For the foregoing reasons, the Court construes the disputed terms, "first member" and "comprises" as used in Claim 1 of the '276 Patent, as set forth above.  This case remains referred to Judge Netburn for purposes of general pretrial supervision.  Consistent with the previously issued scheduling order, Dkt. 66, any party that wishes to move for summary judgment shall file a pre-motion letter with the undersigned within 157 days of this Order, *i.e.*, by December 5, 2022.

SO ORDERED.

Dated: June 29, 2022  
New York, New York

JOHN P. CRONAN  
United States District Judge

---

[13] Here too, Plaintiff argues that this construction is not consistent with what he "intended" to be the interpretation of "comprises." Pl. Br. at 9-10.  That subjective intent does not alter the above analysis. *See Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358 (Fed. Cir. 2001) ("No inquiry as to the subjective intent of the applicant or PTO is appropriate or even possible in the context of a patent infringement suit.").